IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02082-CMA-NRN

AFFORDIFY, INC.,

Plaintiff,

v.

MEDAC, INC.,

Defendant.

---

**ORDER ON PLAINTIFF'S MOTION TO FILE
SECOND AMENDED COMPLAINT (DKT. #71)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter is before the Court on Plaintiff's Motion for Leave to File its Second Amended Complaint. *See* Dkt. #71. Plaintiff's Motion was referred to me by Judge Arguello on September 1, 2020. Defendant filed an opposition. *See* Dkt. #80. Plaintiff filed a reply. *See* Dkt. #81. I heard oral argument on the Motion for Leave to Amend on September 16, 2020. *See* Dkt. #83 (courtroom minutes). I have read the filings of the Parties, considered their oral presentations, and the relevant authorities.

One of the issues raised in connection with the Motion for Leave is that the proposed Second Amended Complaint drops Plaintiff's claim for misappropriation of trade secrets. Defendant had objected to the proposed amendment in part because Defendant believed that the misappropriation of trade secrets claim should be dismissed with prejudice, rather than without prejudice (as would be the case if the amendment merely were granted without the trade secrets claim). On September 23,

2020, after oral argument, the Parties filed a stipulation regarding the dismissal of the misappropriation of trade secrets claim. *See* Dkt. #84. Per the stipulation, the misappropriation of trade secrets claim has been dismissed <u>with prejudice</u> with Defendants reserving the right they may have to seek attorneys' fees and/or costs in connection with the trade secrets count, and Plaintiff Affordify reserving its right to oppose any such claim for attorneys' fees and/or costs.

With the issue of the dismissal with prejudice of the trade secrets claim disposed of, Defendant's arguments against allowing amendment are the following: (1) that Plaintiff Affordify unduly delayed in bringing its motion and lacks good cause to seek modification of the scheduling order; (2) amendment would be futile; (3) and Defendants would be unduly prejudiced by the amendment. I reject each of these arguments and order that Plaintiff Affordify's Motion for Leave to Amend be **GRANTED**.

**Background and Proposed Amendments**

This is a business dispute. Plaintiff Affordify is a healthcare-focused financial technology company involved in anesthesia medical payment processing. In 2018, Defendant Medac was one of the nation's largest, independently owned, anesthesia revenue cycle management companies. Medac's revenue cycle management services were designed to assist clients with the business management functions associated with the delivery of anesthesia services -- including billing and collection functions.

In early 2019, Medac and Affordify executed a Strategic Services Agreement (the "SSA"), whereby Medac would refer healthcare clients to Affordify and the parties would split fees for services provided to the referred clients. Affordify alleges it spent significant resources towards building relationships with Medac's referrals and

developing an integrated operational platform with Medac. It is alleged that, in turn, Medac was obligated under the SSA to cooperate with Affordify; to provide necessary information to Affordify; and to refrain from taking any steps to disparage Affordify, compete with its services or technology, or solicit Affordify's customers.

In 2019, Medac and Affordify also entered into an additional agreement, a Master Services Agreement ("MSA"), effective April 1, 2019. It is alleged that under a Statement of Work ("SOW"), Medac agreed to pay Affordify $27,000 a month for a minimum of six months in exchange for Affordify providing technology resources to help Medac update its technology platform.

Affordify alleges that throughout the first half of 2019, the parties worked together closely. But on May 1, 2019, when Medac was acquired by Defendant MiraMed, Affordify says the Medac-Affordify relationship began to quickly deteriorate. Affordify claims it began to receive reports that the Defendants were falsely representing to its clients that, among other things, Affordify (i) was not in compliance with the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the Health Information Technology for Economic and Clinical Health (HITECH) Act, and (ii) lacked adequate insurance.

Shortly after the MiraMed acquisition of Medac, it is alleged that Medac terminated the MSA by letter dated May 15, 2019 and the SOW was terminated by letter dated May 10, 2019. On June 27, 2019, Medac sent notice of its intent to terminate the SSA.

Suit was brought against Medac, MiraMed, and Anethsesia Business Consultants, LLC (or "ABC"). ABC is alleged to be an LLC, the members of which are MiraMed and a Michigan Revocable Trust.

In its existing Amended Complaint, Affordify included claims of (1) Breach of Contract against Medac; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing against Medac; (3) Misappropriation of Trade Secrets against all Defendants; (4) Defamation against all Defendants; (5) Intentional Interference with Existing Contracts against all Defendants; (6) Tortious Interference with Prospective Contractual Relations against all Defendants; and (7) Declaratory Judgment against all Defendants.

The proposed Second Amended Complaint drops the existing Claim 3 (Misappropriation of Trade Secrets), adds allegations of willful and wanton conduct carrying the possibility of exemplary damages to the Defamation, Intentional Interference, and Tortious Interference Claims, and adds a claim of Intentional Interference with Existing Contracts (the SSA) against MiraMed only. The newly added Intentional Interference claim against MiraMed similarly includes allegations of willful and wanton conduct that arguably would justify an award of exemplary damages. *See generally*, Dkt. #82-1 (redlined version of proposed Second Amended Complaint).

**Defendants' Arguments Against Amendment**

Defendants first argue that Affordify has not shown good cause to amend the scheduling order and has unduly delayed in seeking amendment. Defendants claim that the Second Amended Complaint either contains facts and allegations Affordify knew or should have known in January 2020 or unsupported speculation that mischaracterizes the evidence upon which Affordify relies. *See* Dkt. #80 at 6.

4

Second, Defendants argue in favor of the dismissal with prejudice of the misappropriation of trade secrets claim. This argument is now moot, given the Parties' stipulation.

Third, Defendants argue that the new tortious interference claim against MiraMed is futile, as MiraMed is the parent company of Medac and there is nothing improper about a parent corporation causing its wholly-owned subsidiary to terminate a contract.

Fourth, Defendants argue that the claims for exemplary damages associated with the defamation claim are futile. On this point, Defendants take issue with the alleged defamatory statements made about Affordify, arguing that these were nothing but "expressions of qualified opinions." Dkt. #80 at 13. Defendants argue that seeking exemplary damages on the defamation claim would be futile because the defamation claim itself is destined for failure.

Finally, Defendants argue that they would be unduly prejudiced by allowing the amendment. They assert that this Second Amended Complaint represents a "radical shift" in the thrust of the case that, had it been timely filed, would have "significantly changed the landscape of discovery." Dkt. #80 at 13. Among other things, Defendants say that they would have sought discovery into Affordify's past, present, and future clients, which are now "directly relevant" given Affodify's new allegation that the Defendants engaged in a "malicious campaign to disparage Affordify and destroy its relationships with both current and prospective clients . . ." *Id.* at 14. Defendants take issue with the newly added allegations that Defendants engaged in a "smear campaign" and "coordinated effort" among themselves. Defendants claim they have been "sand-bagged," with these new allegations being added only after the close of discovery. Had

such allegations been included in earlier versions of the Complaint, Defendants say they would have propounded additional discovery and inquired of Affordify's witnesses as to these new allegations.

### Legal Standards for Amendment

I start with the principle that leave to amend shall be freely granted when justice so requires. *See* Rule 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Of course, in this instance, the amendment comes after the time set in the scheduling order for amendment of pleadings. So, allowing amendment would mean modifying the scheduling order, which requires good cause. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (explaining that once the scheduling order deadline has passed, "a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed.R.Civ.P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard"). In practice, this good cause standard requires the movant to show the scheduling deadlines could not be met despite the movant's diligent efforts. Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff generally knew of the underlying conduct but simply failed to raise the claim, however, good cause could not be shown. *Id.*

Here, the issue of amendment of the complaint is complicated by the fact that Plaintiff seeks to add a request for exemplary damages under Colorado law. Under Colorado state law, the requested remedy of exemplary (punitive) damages may not be

6

included in the initial complaint. Instead, per Colo. Rev. Stat. § 13–21–102(1.5)(a), such a request "may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to Rule 26 of the Colorado Rules of Civil Procedure and the plaintiff establishes prima facie proof of a triable issue [on exemplary damages]." Thus, under Colorado law, a plaintiff may not demand exemplary damages in the original complaint and, in order to add such a request, the plaintiff must develop sufficient evidence to at least create a triable issue for the jury on exemplary damages. In many cases, this will be after discovery and after the passage of the deadline set in the scheduling order for amendment of pleadings.

The Rule 15 and Rule 16 standards do apply to a movant's untimely request to amend pleadings to add a claim for exemplary damages. *See, e.g., Fiechtner v. Amer. Family Mut. Ins. Co.*, No. 09–cv–02681–REB–MEH, 2010 WL 5185490, at *3 (D. Colo. Oct. 19, 2010); *Alarid v. Biomet, Inc.*, No. 14–cv–2667–REB–NYW, 2016 WL 309053, at *2 (D. Colo. Jan. 26, 2016); *Martin v. Amer. Family Mut. Ins. Co.*, No. 05–cv–00960–ZLW–BNB, 2007 WL 1159945, at *1 (D. Colo. Apr. 17, 2007). As a practical matter, this means that if a plaintiff has diligently sought to develop the evidence sufficient to create a prima facie case for exemplary damages, learns new information through discovery, and has not unduly delayed in moving to amend once that evidence is collected, then good cause for the amendment is established. *See Schimek v. Owners Ins. Company*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833 (D. Colo. August 23, 2017) (finding good cause to amend to add request for exemplary damages where plaintiff obtained supporting evidence in the course of discovery); *Kassinove v. McClendon*, 16–cv–00565–WYD–KLM, 2017 WL 4277184 (D. Colo. Sept. 27, 2017) (denying leave to

amend to add request for exemplary damages where Plaintiff did not submit any evidence in support that was obtained through discovery and nothing would have prevented Plaintiffs from filing within the deadline); *State Farm Mut. Auto Ins. Co. v. Fisher*, No. 08–cv–01687–REB–MEH, 2009 WL 1011194, at *4–5 (D. Colo. April 15, 2009) (applying Colorado exemplary damages statute to determine whether amendment appropriate and considering evidence in light of Rule 15 obligation to freely grant leave to amend); *E & S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08–cv–01694–WYD–KLM, 2009 WL 837656, at *2–3 (D. Colo. March 26, 2009) (same); *Siemens v. Romero*, No. 09–cv–02065–KLM–CBS, 2010 WL 427893, at *1 (D. Colo. Feb. 3, 2010) (same); *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2(D. Colo. Aug., 29, 2008) (granting leave to amend to add claim for exemplary damages, noting that it is expected that the "discovery process" will provide the evidence necessary to establish the prima facie case).

Exemplary damages are permitted if it is shown that Defendant's actions resulted in injury "attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13–21–102(1)(a). Willful and wanton conduct is conduct that is "purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or the rights and safety of others, particularly the plaintiff." *Id.* § 13-21-102(1)(b); *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (*citing Tri-Aspen Const. Co. v. Johnson*, 714 P.2d 484, 486 (Colo. 1986); *Frick v. Abell*, 602 P.2d 852, 854 (Colo. 1979)). "Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors*, 112

P.3d at 66. "Malicious" conduct refers to "'an intention or desire to harm another [usually] seriously through doing something unlawful or otherwise unjustified' or 'revengeful or unfriendly feelings.'" *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 232 P.3d 277, 286 (Colo. App. 2010) (quoting *Webster's Third New Int'l Dictionary* 1367 (2002)).

In addition, it is well-settled that a plaintiff need only put forth evidence to establish a *prima facie* case of willful and wanton conduct to satisfy the requirements of § 13-21-102(1.5)(a). A plaintiff need not respond to contrary evidence. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in Plaintiffs' favor."); *Am. Econ. Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05-cv-01870-LTB-BNB, 2007 WL 160951, at *4 (D. Colo. Jan. 17, 2007), ("I am concerned here only with the preliminary question of whether [the plaintiffs] have made a prima facie case under § 13-21-102(1.5)(a), not with summary judgment."). Thus, Defendant's extensive effort at explaining or rebutting Plaintiff's alleged "mischaracterizations" of the evidence, and provision of contrary evidence serves no purpose. In connection with deciding whether Plaintiff has established a prima facie case, I look only to the evidence provided by the Plaintiff, and view that evidence in the light most favorable to the Plaintiff.

**Analysis**

First, I find that Plaintiff has shown good cause for moving to amend at this time. Much of the evidence cited for establishing a prima facie case was obtained during discovery and includes numerous references to depositions. In connection with an amendment to add claims for exemplary damages, this constitutes good cause. *Schimek*, 2017 WL 3621833, at *2. As Affordify points out (and Defendants do not dispute), the vast majority of discovery in this case occurred after December 20, 2019 and no depositions had happened by January 8, 2020, the scheduled date for amendment of pleadings. The Court finds that Affordify has established good cause by pointing to evidence supporting willful and wonton conduct that was discovered after the date for amendment. In addition, the Court does not find that Affordify unduly delayed in seeking amendment. The Court cannot fault Affordify for waiting to amend until it completed discovery and obtained first-hand accounts, via deposition, of the Defendants' alleged misconduct.

Second, I do find that Affordify has put forth sufficient evidence to support a *prima facie* case of exemplary damages. Much of Defendants' challenge to Affordify's prima facie case is presented as a factual challenge to the allegations, asserting that Affordify has mischaracterized the evidence. *See* Dkt. #80 at 2-4 (where Defendants list 11 separate points where Affordify has allegedly mischaracterized evidence from depositions or documents). It is enough to say that these are factual disputes pure and simple, and in the context of an assessment of the *prima facie* case for exemplary damages amendment purposes, I need only look at the evidence presented by the Plaintiff and take all reasonable inferences in the Plaintiff's favor. Contrary evidence is

not part of the equation. *Bituminous Cas. Corp. v. Hartford Cas. Ins. Co.*, No. 12-cv-00043-WYD-KLM, 2013 WL 6676157, at *3 (D. Colo. Dec. 18, 2013). Using this admittedly low threshold, I find Affordify has made out its *prima facie* case.

Among other things, Affordify presented evidence that until the Medac acquisition by MiraMed, Medac and Affordify were working well together, but after the MiraMed acquisition, MiraMed, unhappy with the contractual fee splitting arrangement of its subsidiary, insisted on re-negotiation, which Affordify was willing to consider but did not want to terminate the SSA as a precondition to negotiations. Nevertheless MiraMed caused its subsidiary, Medac, to terminate the SSA, thereby "putting the Affordify relationship on hold" and Medac's President later identified "need to have a consistent message to provide to those clients that are anticipating services from Affordify . . . as a result of previous sales efforts specific [to] existing clients." Dkt. #71-21 at 4.

Affordify presented evidence from third party clients who either worked with or were contemplating working with Affordify that this "consistent message" included bad-mouthing to Affordify's clients Affordify's capabilities and trustworthiness with patient information. Per third party witnesses, Defendants had stated to the clients that Affordify's compliance certifications were not up to date, that Affordify presented serious concerns regarding the integrity of patient information, and that the client might face legal liability if it were to stay with Affordify. Dkt. #71-2 at 39 (Deposition of Dr. Alan Smith). Another potential Affordify client was told by Defendants that Affordify did not have the appropriate credentials or audited financial statements. Dkt. #71-7 at 3-4 (Deposition of Martin John Kungl). Viewing this evidence in Affordify's favor, it is a reasonable inference that after Medac was acquired by MiraMed, the Defendants began

11

to purposefully spread false statements about Affordify's capabilities and trustworthiness. If proven, this would qualify as willful and wanton behavior that would justify an award of exemplary damages. *See Coors,* 112 P.3d at 66 (statutory requirements are met where defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result).

      I reject Defendant's suggestion that the request for exemplary damages associated with the defamation claim must fail because the defamation claim is itself built on "general expressions of opinion couched with qualifiers." This is more of a motion to dismiss or summary judgment argument than an argument against allowing an amendment to add a request for exemplary damages. Where the proposed amendment is not patently futile on its face, I am inclined to follow the principle articulated by Judge Ebel, who noted of a defendant's extensive futility argument raised in opposing amendment: the "futility argument seems to place the cart before the horse. Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, Civ. No. 07-cv-01145, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008). *See also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d. 726, 736 (D. Del. 2002) ("[T]his court hesitates to undergo a rigorous 12(b)(6) analysis of the claims alleged to be futile based on less than complete briefing, especially in light of the deferential standard under which the court must consider 12(b)(6) motions. The court believes the better course is to liberally allow amendments that state a colorable claim and defer judgment as to whether they survive a motion to dismiss for failure to state a claim until such time

when that motion is raised."). Here, the Defendants did not challenge the original defamation claim with a Rule 12(b) motion. And briefing on the Motion to Amend is no place to be making summary judgment arguments.

As to the argument that the new claim against MiraMed is futile because a corporate parent is privileged to interfere with the contracts of a wholly-owned subsidiary, that does not appear to be the law in Colorado. The issue of whether a parent's interference with a subsidiary's contract is proper or not (so as to make any interference privileged) is a question of fact, and Colorado courts have allowed such claims. *See Rodriguez v. Bar-S Food Co.*, 539 F. Supp. 710, 718 (D. Colo. 1982) (denying motion to dismiss claim against parent company for tortious interference with subsidary's contract, where the court did not believe "there is a general rule in Colorado that a parent corporation is always immune from claims of tortiously inducing breach of contract to which its subsidiary is a party. The claim of legitimate business management is more properly raised as an affirmative defense, to be considered by the finder of fact.").

On this subject, as far as Colorado law goes, Defendants cite to *Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d 1128 (Colo. App. 1985) for the proposition that a wholly-owned subsidiary cannot be held liable for interfering with its parent company's contractual relations. But that conclusion in *Friedman & Son* was reached as a matter of fact. The trial court had determined that the subsidiary in that case was the alter ego of the parent company Safeway -- merely an "instrumentality." *Id.* at 1131. Under those specific circumstances, there would be no separate claim for interference against a corporate parent or subsidiary—because the two entities were essentially indivisible. In

this case, as far as I can tell, there is no concession by Defendants that Medac has no separate corporate existence from MiraMed, is MiraMed's instrumentality, or its alter ego. Without such allegations or concession, I cannot conclude that the intentional interference claim against MiraMed is futile.

Finally, I do not find that Defendants would be unfairly prejudiced by the amendment. Defendant argues that the Second Amended Complaint represents a "radical shift" in the nature of the allegations that would have "significantly changed the landscape of discovery" had they been made earlier in the litigation process. I am not convinced. Nothing about these new allegations is significantly different from what was previously alleged. The defamation claim was already in the case. The claim of intentional interference with contractual relations was already in the case. Defendants insist that had the terms "smear campaign" and "coordinated effort" appeared in prior versions of the Complaint, they would have "propounded written discovery and inquired with Affordify's witnesses as to the basis for these allegations." Among other things, Defendants insist they would have explored the identity of Affordify's current and prospective clients to test Affordify's claims of damage.

But there is no prejudice here. With the defamation claim pre-existing in the lawsuit, Defendants already should have probed the issue of Affordify's current and prospective clients to determine the nature and scope of the alleged reputational injury. I find that Affordify's changes to the complaint as reflected in the proposed Second Amended Complaint are marginal at worst, provide additional detail based on information that was learned during discovery, and do not put Defendants at any disadvantage in defending the case, even though discovery is closed.

14

**Conclusion**

For the foregoing reasons, I grant Affordify's Motion for Leave to file a Second Amended Complaint.

October 27, 2020                                                      By the Court

_____
N. Reid Neureiter
United States Magistrate Judge