IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02082-RMR-NRN

AFFORDIFY, INC.,

Plaintiff,

v.

MEDAC, INC.,
MIRAMED GLOBAL SERVICES, INC., and
ANESTHESIA BUSINESS CONSULTANTS, LLC,

Defendants.

---

**ORDER RE: DEFENDANTS' MOTION FOR LEAVE TO DISCLOSE
RETAINED REBUTTAL EXPERT OR IN THE ALTERNATIVE TO STRIKE
PLAINTIFF'S EXPERT (DKT. #139)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before me on Defendants' Motion for Leave to Disclose Retained

Rebuttal Expert or in the Alternative to Strike Plaintiff's Expert (the "Motion"). (Dkt.

#139.) Defendants' Motion was referred to me by Judge Christine M. Arguello on May

13, 2021. (Dkt. #140.)[1] Plaintiff filed a response in opposition, (Dkt. #147) and

Defendants filed a reply. (Dkt. #150.) I heard oral argument on the Motion on July 21,

2021. (*See* Dkt. # 152 (courtroom minutes).) Pursuant to my order, Defendants

submitted their proposed expert rebuttal report on July 21, 2021. (Dkt. #153-1.) Plaintiff

responded to the proposed report on July 23, 2021 (Dkt. #154.) I have taken judicial

---

[1] This case was reassigned to Judge Regina M. Rodriguez on July 6, 2021. (*See* Dkt.
#151.)

notice of the file and considered the briefing and the supplemental documents, as well as argument of the parties and applicable law.

## BACKGROUND

I have previously detailed the factual background of this case in the Order Denying Defendants' Motion to Exclude or Limit Plaintiff's Expert James T. Schmid's Opinions, entered on April 30, 2021. (Dkt. #126.) The Court assumes the parties' familiarity with the history of this matter and will not repeat it here except as necessary.

I entered the Scheduling Order in this matter on September 26, 2019. (Dkt. #21.) Per the Scheduling Order, in relevant part, the parties were to identify their affirmative experts by May 1, 2020 and rebuttal experts by June 1, 2020. (*Id.*) There is no dispute that Mr. Schmid's expert report was timely disclosed in May 2020. On June 29, 2020, Defendants disclosed two rebuttal expert witnesses, Tony Mira and Fred Fazio (the Chief Executive Officer and Chief Financial Officer, respectively, of MiraMed), to "address the multiple incorrect assumptions in Mr. Schmid's report." (Dkt. #139 at 3.)[2] Defendants deposed Mr. Schmid on July 23, 2020.

Defendants filed their Motion to Exclude or Limit Plaintiff's Expert James T. Schmid's Opinions or in the Alternative for a Daubert Hearing ("Motion to Exclude") (Dkt. #116) on February 14, 2021, arguing that Mr. Schmid's opinion should be excluded because he: (1) relied on insufficient facts and data; (2) used an unreliable method; and (3) wrongly applied his method. Plaintiff responded to this motion on March 10, 2021, and included a six-page affidavit from Mr. Schmid. (Dkt. ##123 &123-4.)

---

[2] If Mr. Mira and Mr. Fazio were not disclosed until June 29, 2020, then it appears this disclosure was untimely under the Scheduling Order. However, no party has raised this issue to the Court and, at this point, any objection is waived.

Ultimately, I denied Defendants' Motion to Exclude. (Dkt. #126.) Defendants filed an objection to the Order (*see* Dkt. #132), which remains pending before Judge Rodriguez.

On May 11, 2021,[3] Defendants filed the pending Motion, seeking leave to designate a retained expert witness to rebut Mr. Schmid's expert report, which Plaintiff disclosed more than a year earlier in May 2020. Alternatively, Defendants argue that, if I deny the Motion, I should exclude Mr. Schmid's testimony. Plaintiff contends that Defendants have failed to show good cause for modifying the scheduling order and that Defendants are impermissibly asking me to reconsider my prior ruling on the motion to exclude Mr. Schmid's opinion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides, in relevant part, that a party "must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Such disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a). In the present matter, I ordered that the parties designate any rebuttal experts by June 1, 2020. (*See* Dkt. #21.)

The parties dispute whether Rule 16 or Rule 37 governs Defendants' request for leave to make the delayed disclosure. Regardless, the parties addressed both standards in their briefing and had the opportunity to be heard at oral argument.

Allowing Defendants to designate a rebuttal expert now, more than a year later, would clearly necessitate modifying the Scheduling Order. Thus, Rule 16 applies to the

---

[3] Defendants filed their first Motion for Leave to Disclose Retained Rebuttal Expert or in the Alternative to Strike Plaintiff's Expert on May 7, 2021, but it was denied without prejudice for failure to comply with D.C.COLO.L.CivR 7.1(a). (*See* Dkt. ##136 & 137.)

present dispute and provides, in relevant part, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* D.C.COLO.LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court."). Generally, the good cause standard focuses on the moving party's diligence in attempting to meet the scheduled deadline:

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may 'modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension.' Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citing *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000)). However, "[w]hat constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." 6A Charles Alan Wright & Arther R. Miller, *Federal Practice & Procedure* § 1522.2 (3d ed.)

Though Rule 16 governs modifications of the Scheduling Order, Rule 37 should not be entirely ignored. Here, Defendants sought leave to amend the Scheduling Order to permit the untimely disclosure of a rebuttal expert witness. It seems that if Defendants had instead disclosed the report without seeking leave to do so, Rule 37 would apply. *See Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.,* No. 14-CV-01906-MSK-NYW, 2015 WL 6376000, at *4 (D. Colo. Oct. 22, 2015) (applying Rule 37

where Plaintiff had designated expert witness out of time, and explaining that "had

Plaintiff sought leave to amend the designation deadline rather than simply designate

[the expert], [the Court] would have applied the 'good cause' analysis of Rule

16(b)(4))").

Rule 37(c) provides:

(1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c). Thus, if a party fails to disclose an expert "at the times and

in the sequence the court orders" (Fed. R. Civ. P. 26(a)(2)(D)), the remedies in

Rule 37(c) become available.

I find it appropriate to consider both Rule 16 and Rule 37 in this instance.

Further, I am guided by the directive of Rule 1: the Federal Rules of Civil Procedure are

to be "construed, administered, and employed by the court and the parties to secure the

just, speedy, and inexpensive determination of every action and proceeding." Fed. R.

Civ. P. 1.

**ANALYSIS**

I.      **Leave to Disclose Retained Rebuttal Expert Report**

I have no doubt that the Defendants' Motion is delayed: rebuttal expert reports

were due nearly a year Defendants filed the present Motion. Defendants argue that they

could not have known about the need to file the rebuttal expert report any earlier than

their May 2021 filing. Specifically, Defendants identify three issues allegedly revealed by

Mr. Schmid's deposition testimony and an affidavit submitted in response to the Motion

to Exclude that supposedly justify the late rebuttal report: Mr. Schmid (1) relied on a

small subset of the information he previously claimed to have relied on (*see* Dkt. #139

at 3–5), (2) relied on only a fraction of the documents he listed in the "Documents Relied

Upon" section of his report (*Id.* at 5–6), and (3) failed to apply the accepted "before-and-

after" method for analyzing lost profits. (*Id.* at 7.)

First, Defendants suggest that Mr. Schmid falsely represented, both in his report

and at his deposition, that he relied on three months of data from its client Anesthesia

Consultants of Augusta ("ACOA"), when he really only relied on approximately 7% of

three months of data. (*Id.* at 3–4.) Defendants argue that they did not learn of this issue

until seeing Mr. Schmid's affidavit, which Plaintiff submitted in response to Defendants'

Motion to Exclude on March 10, 2021. Defendants state that the 7% of data used

"misrepresent[s] ACOA's actual collection data, and Defendants never had an

opportunity to discover the actual collection data or show how Mr. Schmid 'isolated' that

data." (*Id.* at 5.)

Plaintiff contends that Defendants knew that Mr. Schmid used an isolated subset

of the ACOA collections data as early as the summer of 2020, when Plaintiff produced

Mr. Schmid's working file in advance of his deposition, and no later than February 2021,

when Defendants filed the Motion to Exclude. (*See* Dkt. #147 at 8.) I agree. The
allegation that Defendants never had an opportunity to discover the actual collection
data until seeing Mr. Schmid's March 10, 2021 affidavit is simply false—Defendants
received the underlying data before Mr. Schmid's deposition and had the opportunity to
depose him about the data and his report. Defendants should have questioned
Mr. Schmid about this information when they first had the opportunity; that they failed to
do so is no one's fault but Defendants', and certainly cannot be blamed on Plaintiff or
Mr. Schmid. Even if Defendants did not identify this issue by the time of Mr. Schmid's
deposition, they were aware of it no later than February 2021. In their Motion to
Exclude, Defendants complained that Mr. Schmid's "entire $35,000,000+ damages
estimate is based on an unidentified subset (apparently less than 10%) of collections
taken from 3 months' of Affordify's *client's* collections data." (Dkt. #116 at 3 (emphasis
in original).) Defendants argue that though they knew *some* subset of data was used,
they did not know the exact subset until they received Mr. Schmid's affidavit in March of
this year and thus, according to them, did not know of the need for a rebuttal expert.
(Dkt. #150 at 2.) It is unclear how knowing the *exact* subset of data suddenly
necessitates a rebuttal expert witness report when Defendants previously decided that
*some* subset of data, which they figured to be less than 10%, did not require rebuttal
expert testimony.

Second, I consider Defendants' allegation that Mr. Schmid relied on only a small
subset of documents he had claimed to rely on (as set forth in the "Documents Relied
Upon" section of his report), and that he instead improperly relied on assertions by
Plaintiff and its lawyers. (Dkt. #139 at 5.) Defendants do not argue that this information

first came to light in March 2021. Instead, they concede Mr. Schmid explained the

documents relied on at his July 23, 2020 deposition but complain that the deposition

occurred *after* the June 1, 2020 deadline to disclose rebuttal experts. (*Id.*) However,

Defendants deposed Mr. Schmid more than a year ago, on July 23, 2020. If they had

concerns about the impropriety of Mr. Schmid relying on fewer documents than he

originally listed in his report, they should have raised that issue last summer after his

deposition. Now, Defendants assert that their rebuttal expert is necessary to "offer

testimony about whether it was appropriate for Mr. Schmid to have relied on the scant

evidence he chose to rely on." (Dkt. 139 at 10–11.) Mr. Schmid's reliance on fewer

documents than provided is hardly adequate justification for the delayed request to

allow rebuttal expert witness disclosure, particularly when Defendants have known

about this issue since Mr. Schmid's deposition.

Third, Defendants argue that Mr. Schmid failed to apply the "before-and-after"

method. (*See* Dkt. #139 at 7.) In fact, they argue, Defendants were not even aware that

Mr. Schmid purported to apply this method until after seeing his March 10, 2021

declaration. In their Motion to Exclude, Defendants referred to it only as a "creative

methodology." (Dkt. #116.)

Notably, I have already found that Mr. Schmid applied the generally accepted

"before-and-after" method (Dkt. #126 at 9). I did not and do not decide whether Mr.

Schmid properly applied this method, whether his underlying assumptions or correct,

and whether he reached the proper result. That is for the jury to decide. However,

regardless of the name of the methodology applied (or not applied), I tend to agree with

Plaintiff: "it strains credulity that Defendant believed it was unnecessary to retain a

rebuttal expert if Mr. Schmid used a creative methodology . . . but a retained expert is needed if he used the before-and-after method." (Dkt. #147 at 9.)[4]

What happened here is that Defendant made a calculated decision not to designate a rebuttal expert witness on damages. Defendant thought, wrongly (at least for now, depending on the result of their objection), that they would be able to exclude Plaintiff's expert. When the motion to exclude was denied, Defendants faced the prospect of a trial with a plaintiff's damages expert prepared to testify that Plaintiff incurred $35 million in damages, without any rebuttal expert to explain to the jury why that testimony should be rejected. Defendant bet big and bet wrong. Now Defendant seeks to cure the problem by hiring and designating the rebuttal expert they should have designated more than a year ago.

Clearly, Defendants' request is unduly delayed. Plaintiff argues that I should therefore deny the request, as my late colleague Magistrate Judge Craig B. Shaffer did in *Anderson v. Seven Falls Co.*, No. 12-CV-01490-RM-CBS, 2013 WL 3771300 (D. Colo. July 18, 2013) (denying motion to amend scheduling order to allow plaintiff's request for late disclosure of rebuttal expert witness because plaintiff's request was unduly delayed). However, an unpublished district court decision, though persuasive, is not binding. Moreover, under the Order of Reference (Dk. #5), I have been designated to conduct non-dispositive proceedings and have discretion to manage the deadlines in this case. Here, I find it would be inappropriate to consider the late request to designate

---

[4] Further, a review of Defendants' proposed expert rebuttal report (Dkt. #153-1) confirms that, by and large, Defendants had or could have had the information they needed (had they asked certain questions of Mr. Schmid during his deposition or engaged an expert earlier) to timely prepare a rebuttal expert report.

a rebuttal expert in a vacuum focusing only on Defendants' delay. Instead, I consider the impact that disallowing the rebuttal expert disclosure would have on trial. I also consider Defendants' request against the backdrop of alternative remedies available under Rule 37, and am guided by the directives of Rule 1. In this case, despite Defendants' lack of diligence, I find that good cause exists to amend the Scheduling Order.

Mr. Schmid's report offers the opinion that Plaintiff, a fledgling company, is entitled to more than $35 million in damages. This number is astronomical, especially for a start-up company. Further, as Defendants argue, Mr. Schmid arrives at this number by extrapolating what appears to be a very small amount of data. Again, I make no conclusions about the correctness of Mr. Schmid's expert report and his testimony— that is for the jury. And, because it is for the jury, the interests of justice and reaching a decision on the merits are best served by allowing the disclosure of Defendants' rebuttal expert witness despite Defendants' delay. Because of the complex nature of the expert damages report and the large amount of damages Plaintiff's seeks, the jury will benefit from hearing expert testimony as well as rebuttal testimony. This matter is scheduled for a jury trial beginning in April 2022, eight months from now. There is ample time to reopen discovery for the limited purpose of allowing Plaintiff to depose Defendants' rebuttal expert and supplement Mr. Schmid's report, if necessary. The additional marginal cost of this discovery pales in comparison with what is potentially at stake in the litigation. The prejudice to Defendants if leave is denied would far outweigh the prejudice suffered by Plaintiff for the late disclosure. Thus, I find that the Scheduling Order should be modified and the late disclosure permitted.

Nevertheless, Defendants' delay still has consequences as it was neither justified nor harmless. Under Rule 37(c), in lieu of striking a late-designated expert's report and testimony, a district court "may order the payment of the reasonable expenses, including attorney's fees, caused by the failure [to timely disclose under Rule 26(a)]." Fed. R. Civ. P. 37(c)(1)(a). "[A] district court need not make express findings concerning existence of a substantial justification or the harmlessness . . . but it should consider the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999)).

As set forth above, Defendants could have and should have timely disclosed a rebuttal expert or, at the very least, sought leave to amend the Scheduling Order much sooner. Instead, Defendants put all their eggs in one basket—seeking to exclude Mr. Schmid's testimony—and then dropped the basket. Plaintiff is certainly prejudiced by the late disclosure. Discovery closed months ago and Plaintiff has had no opportunity to depose Defendants' rebuttal expert. Indeed, the rebuttal report was not even filed until after oral argument on the Motion. (*See* Dkt. #153.) Plaintiff was entitled to proceed with preparing for trial on the assumption that discovery had closed. Of course, I am empowered to reopen discovery and will do so to allow Plaintiff to depose the rebuttal expert. However, that does not entirely cure the harm suffered by Plaintiff: reopening discovery will require Plaintiff "to incur additional expense in disposing the newly

disclosed expert, consulting with its own experts, and supplementing their reports." (Dkt. #147 at #13 (quoting *Anderson*, 2013 WL 3771300, at *8). Additionally, Plaintiff represented, and I have no reason to doubt, that it has obtained litigation financing to cover some of the costs of this case. (Dkt #147 at 14.) Reopening discovery at such a late date will necessarily impact the litigation budget for Plaintiff, a start-up entity.

Accordingly, in my discretion, I find it appropriate that, if Plaintiff wishes to take the deposition of Defendants' rebuttal expert, Defendants shall pay the following costs and fees related to the deposition: (1) the court reporter's fees, including fees for any transcripts;  (2) the rebuttal expert witness's fees for attending the deposition; (3) and the fees for one lawyer of Plaintiff's counsel at a reasonable hourly rate to attend and take the deposition for no longer than seven hours. Fees for deposition preparation will not be compensated.

Because I am allowing the late disclosure of Defendants' rebuttal expert witness and the attendant report, I need not consider Defendants' alternative request to strike Mr. Schmid's report. As such, that request is denied.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** Defendants' Motion for Leave to Disclose Retained Rebuttal Expert or in the Alternative to Strike Plaintiff's Expert (Dkt. #139) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Defendants' request for leave to disclose the retained the rebuttal expert is **GRANTED**;
  - o The Scheduling Order (Dkt. #21) is amended to permit the untimely disclosure of Defendants' rebuttal expert witness, and to reopen

discovery for the limited purpose of allowing Plaintiff to depose
Defendants' rebuttal expert if Plaintiff chooses (with costs and legal
fees to be paid as described above). After deposing the rebuttal
expert, Plaintiff may prepare and disclose a supplement to Mr.
Schmid's report, if Plaintiff deems it necessary. Plaintiff shall
conduct the deposition and provide any supplementation to Mr.
Schmid's report as soon as practicable, but no later than October
15, 2021;

- Defendants' request to strike Mr. Schmid's expert report is **DENIED**.

August 18, 2021                    By the Court

_____

N. Reid Neureiter
United States Magistrate Judge